IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

In re:          JOSHUA B. ROMANO,                        Case No. 18-35464-KRH
                                                         Chapter 7
                        Debtor.
_____

MELISSA K. BASS,

                        Plaintiff,

v.                                                       Adv. Pro. No. 19-03017-KRH

JOSHUA B. ROMANO,

                        Defendant.
_____

## MEMORANDUM OPINION

On September 19, 2019 (the "Trial Date"), the Court conducted a trial (the "Trial") on the

complaint (the "Complaint") of Melissa K. Bass (the "Plaintiff") for a determination whether the

debt owed to her by the debtor, Joshua B. Romano (the "Debtor"), is not dischargeable under

section 523(a)(2)(A) of title 11 of the United States Code (the "Bankruptcy Code").  At the

conclusion of the trial, the Court took the matter under advisement.

This Memorandum Opinion sets forth the Court's findings of fact and conclusions of law

in accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure.[1]  The Court has

subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(a) and

1334 and the General Order of Reference from the United States District Court for the Eastern

---

[1]   Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings
of fact when appropriate.  *See* Fed. R. Bankr. P. 7052.

District of Virginia dated August 15, 1984.  This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (I), and (O), in which final orders or judgments may be entered by a bankruptcy judge.  Venue is appropriate in this Court pursuant to 28 U.S.C. § 1409(a).

On October 8, 2016, the Plaintiff entered into a contract (the "Purchase Agreement") to acquire a residence located at 3122 Edgewood Avenue, Richmond, Virginia 23222 (the "Property") from CNJ Ventures LLC ("CNJ"), an entity solely owned by the Debtor.  Pl.'s Ex. 4. The Purchase Agreement contemplated that CNJ would perform various renovations and repairs to the Property prior to an anticipated closing date in January 2017.  *Id.*  Closing was delayed as work on the Property ensued.  In the meantime, Plaintiff sold her existing home and obtained temporary housing until the renovations and repairs could be finished.  In April 2017, Plaintiff had a home inspection performed on the Property.  Pl.'s Ex. 5.  The inspection revealed a number of deficiencies that still needed to be addressed by CNJ.  But Plaintiff was anxious to occupy her new home.  Although not all of the repairs and renovations had been completed to Plaintiff's satisfaction, she nevertheless agreed to close on the purchase of the Property, based upon the Debtor's assurances that he would correct the outstanding issues after closing.  Compl. ¶¶ 7-9.  Plaintiff did not request that any portion of the purchase price be escrowed to pay for the promised repairs.

Following closing on May 5, 2017, Plaintiff provided the Debtor with a list of the items that needed to be completed or repaired.  Pl.'s Ex. 5.  The Debtor attended to certain of the issues on the list over the course of the next few months, but he did not correct all of the noted deficiencies to Plaintiff's satisfaction.  Work on the Property ceased entirely near year end when the Debtor ran out of funds.  Plaintiff thereupon obtained estimates of the cost to complete the outstanding items.  *See, e.g.*, Pl.'s Ex. 12, 13A, 13D, 14, 15 B-E, 16, 17, 18, 19, 20.  As of the

Trial Date, Plaintiff had commenced work to finish the repairs and renovations on the Property utilizing her own funds, but not all of the issues had been resolved.

Almost a year following closing, on April 20, 2018, Plaintiff sued the Debtor and three entities solely owned and operated by him, including CNJ, in the Circuit Court for the City of Richmond, Virginia (the "State Court").  The State Court complaint included four counts alleging breach of contract, misrepresentation and fraud, breach of implied warranty, and unjust enrichment.   Another count sought to void certain transfers and assert liens against the defendants under sections 55-80 through 55-82.1 of the Virginia Code.[2]  Pl.'s Ex. 1.  The State Court entered judgement by default as to liability against all four defendants on July 31, 2018 (the "Default Judgment").  Pl.'s Ex. 2.  On October 31, 2018, the Debtor filed a voluntary petition under chapter 7 of the Bankruptcy Code, thereby staying the State Court proceeding as to the Debtor.  That same day, the State Court fixed damages against the remaining three corporate defendants in the amount of $239,539.86.

Plaintiff timely filed the Complaint in the case at bar on February 7, 2019, seeking a determination of the dischargeability of the Default Judgment.  The Complaint alleges that the Debtor induced Plaintiff to close on the purchase of the Property by false pretenses, false representations, or actual fraud.  Due to Plaintiff's reliance on the Debtor's false pretenses, false representations, or actual fraud, Plaintiff claims that she sustained damages of not less than $239,539.86.   Thus, Plaintiff requests that her claim against the Debtor be declared non-dischargeable under section 523(a)(2)(A) of the Bankruptcy Code.

---

[2]   Effective October 1, 2019, Title 55 of the Virginia Code was repealed and replaced with Title 55.1.  Former sections 55-80 through 55-82.1 now appear at sections 55.1-400 through 55.1-403, with certain substantive modifications.   *Compare* Va. Code §§ 55-80 to 55-82.1 (repealed 2019), *with* Va. Code §§ 55.1-400 to 55.1-403.

An overriding policy goal of the Bankruptcy Code is to afford debtors with a fresh start. *Dominion Va. Power v. Robinson* (*In re Robinson*), 340 B.R. 316, 328 (Bankr. E.D. Va. 2006) (citing *KMK Factoring, L.L.C. v. McKnew* (*In re McKnew*), 270 B.R. 593, 617 (Bankr. E.D. Va. 2001)). To promote that goal, section 727 of the Bankruptcy Code allows Chapter 7 debtors to receive a general discharge of their debts except as provided in section 523 of the Bankruptcy Code. 11 U.S.C. § 727(b). Section 523 of the Bankruptcy Code provides certain statutory exceptions to the general discharge. *Id.* § 523(a). In keeping with the policy of promoting a debtor's fresh start, courts are to construe the exceptions to discharge narrowly against the objecting creditor and in favor of the debtor. *TKC Aerospace Inc. v. Muhs*, (*In re Muhs*), 923 F.3d 377, 384 (4th Cir. 2019); *In re Robinson*, 340 B.R. at 329 (citing *Foley & Lardner v. Biondo* (*In re Biondo*), 180 F.3d 126, 130 (4th Cir. 1999)). The burden of proof is on the creditor seeking to except the debt from discharge. *In re Muhs*, 923 F.3d at 384 (citing *Grogan v. Garner*, 498 U.S. 279, 287 (1991)). One of the statutory exceptions applicable to a chapter 7 discharge is on account of debts owed for "money, property, [or] services . . . to the extend obtained by false pretenses, a false representation, or actual fraud . . . ." 11 U.S.C. § 523(a)(2)(A).

At Trial, Plaintiff first argued that the doctrine of collateral estoppel precluded the Debtor from relitigating the dischargeability of the Default Judgment under section 523(a)(2)(A) of the Bankruptcy Code. "State court judgments can collaterally estop the litigation of issues in adversary proceedings in federal bankruptcy court." *Duncan v. Duncan* (*In re Duncan*), 448 F.3d 725, 728 (4th Cir. 2006) (citing *Pahlavi v. Ansari* (*In re Ansari*), 113 F.3d 17, 19 (4th Cir. 1997)). "In determining the preclusive effect of a state-court judgment, the federal courts must, as a matter of full faith and credit, apply the forum state's law of collateral estoppel." *Hagan v.*

4

*McNallen* (*In re McNallen*), 62 F.3d 619, 624 (4th Cir. 1995). In this case, Virginia's law of collateral estoppel applies. Virginia state collateral estoppel law requires five elements:

> First, the issue litigated must have been essential to the prior judgment. Second, the prior action must have resulted in a valid and final judgment against the party sought to be precluded in the present action. Third, the parties or privies in both proceedings must be the same. Fourth, there must be mutuality between the parties. Finally, the factual issue litigated actually must have been litigated in the prior action.

*Reed v. Owens* (*In re Owens*), 449 B.R. 239, 250 (Bankr. E.D. Va. 2011) (quoting *E.L. Hamm & Assocs., Inc. v. Sparrow* (*In re Sparrow*), 306 B.R. 812, 825 (Bankr. E.D. Va. 2003)). Collateral estoppel may apply where the first judgment is a default judgment. *TransDulles Ctr., Inc. v. Sharma*, 472 S.E.2d 274, 276 (Va. 1996) ("Virginia law does not support a blanket exemption from the application of collateral estoppel in the case of a default judgment.").

Collateral estoppel is inapplicable to the case at bar because the first element of Virginia's collateral estoppel doctrine is missing. The issue litigated - false pretenses, false representations, or actual fraud - was not essential to the entry of Default Judgment by the State Court. "The liability in the state court must be specifically based on the identical issue in the adversary proceeding for collateral estoppel to apply." *MT Tech. Enters., LLC v. Nolte* (*In re Nolte*), 542 B.R. 185, 193 (Bankr. E.D. Va. 2015) (citing *Duncan*, 448 F.3d at 729-30); *accord In re Muhs*, 923 F.3d at 387-88 (applying similar Alaskan collateral estoppel law). "[T]he legal standards must be identical and the finder of fact must expressly indicate that liability was found under the identical legal standard and not a lesser standard. . . . Even if the two issues are identical, the state court's finding of liability must be clear. There must be no possibility of a non-identical finding of liability." *In re Nolte*, 542 B.R. at 193 (citing *Duncan*, 448 F.3d at 730). "A corollary to the general rule of collateral estoppel is that, where the court in the prior suit has

determined two issues, either of which could independently support the result, then neither determination is considered essential to the judgment.  Thus, collateral estoppel will not obtain as to either determination." *Ritter v. Mount St. Mary's Coll.*, 814 F.2d 986, 993 (4th Cir. 1987); *see also Kloth v. Microsoft Corp.* (*In re Microsoft Corp. Antitrust Litig.*), 355 F.3d 322, 328 (4th Cir. 2004).

In this case, in order for the Debtor to be collaterally estopped from relitigating non-dischargeability of the debt, the State Court must have specifically found that the Debtor obtained money, property, or services through false pretenses, a false representation or actual fraud.  The Default Judgment did not include specific findings; instead, it granted judgment against the defendants as to liability as requested in Plaintiff's State Court complaint.  Pl.'s Ex. 2. Plaintiff's State Court complaint contained five different counts.  Counts one, three, and four of the State Court complaint did not involve fraud.  Pl.'s Ex. 1.  As the Default Judgment failed to elucidate which of the five grounds upon which it rested and because certain of the counts could not, under any circumstances, support a finding of non-dischargeability under section 523(a)(2)(A) of the Bankruptcy Code, collateral estoppel cannot apply.

Assuming *arguendo* that the issues were identical, collateral estoppel does not apply in the instant case as the issues were not actually litigated.  Here, the Default Judgment recites that Plaintiff and the defendants "presented argument with regard to Plaintiff's motion for entry of judgment by default and [d]efendants' motion for leave to file late answer previously filed." Pl.'s Ex. 2.  But there is no evidence before the Court that Plaintiff presented any evidence in the State Court or that the Debtor substantively participated in the State Court proceedings outside of filing a motion for leave to file a late answer.  The Fourth Circuit has previously rejected the use of collateral estoppel where, as in the case at bar, "there is nothing in the record establishing that

'testimonial and documentary evidence was presented' in the state court proceeding, or that 'proof was presented' of any kind as to whether appellant committed fraud, or indeed that anything occurred at all at the state court trial other than the entry of a money judgment." *Capital Hauling, Inc. v. Forbes*, 75 F. App'x 170, 171 (4th Cir. 2003) (per curiam) (unpublished decision) (quoting *TransDulles Ctr., Inc. v. Sharma*, 472 S.E.2d 274, 276 (1996)); *see also Cheatham v. Bradley* (*In re Bradley*), 478 B.R. 796, 800-02 (Bankr. E.D. Va. 2012) (discussing cases). As in *Reed v. Owens* (*In re Owens*), 449 B.R. 239 (Bankr. E.D. Va. 2011), the only evidence before the Court is the Plaintiff's State Court complaint and the Default Judgment. *Id.* at 253 (refusing to apply collateral estoppel upon presentation of similar evidence). Because there is insufficient evidence before the Court to determine that the issue to be precluded - whether the Debtor obtained money, property, or services through false pretenses, a false representation or actual fraud - was either identical to the issue raised in State Court or actually litigated and essential to the Default Judgment, collateral estoppel does not apply to bar relitigation of non-dischargeability.

Upon consideration of the evidence and arguments presented at Trial, the Court finds that Plaintiff has failed to meet her burden of proof under section 523(a)(2)(A) of the Bankruptcy Code and, therefore, that Plaintiff's claim against the Debtor is dischargeable.[3]

To establish that a claim is non-dischargeable under section 523(a)(2)(A), "a plaintiff must prove four elements: (1) a fraudulent misrepresentation; (2) that induces another to act or refrain from acting; (3) causing harm to the plaintiff; and (4) . . . justifiable reliance on the misrepresentation." *Foley & Lardner v. Biondo* (*In re Biondo*), 180 F.3d 126, 134 (4th Cir. 1999). Plaintiff must prove non-dischargeability under section 523 by a preponderance of the

---

[3]    The Court makes no determination as to the amount of Plaintiff's dischargeable claim.

evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991); *see also* Fed. R. Bankr. P. 4005. Therefore, Plaintiff must prove each element of section 523(a)(2)(A) and "Plaintiff must prove those elements with 'more convincing force' than the evidence adduced by the [Debtor]." *In re Owens*, 449 B.R. at 254 (quoting *Brickhouse v. Orts* (*In re Orts*), Case No. 08-71457-SCS, Adv. Pro. No. 08-07075-SCS, 2009 WL 903259, at *1 (Bankr. E.D. Va. Feb. 24, 2009)).

Plaintiff asserts that she "would not have proceeded to close on the purchase of the Property but for the fraudulent representations" of the Debtor "that all remaining repairs or renovations would be completed within thirty (30) days" of closing. Compl. ¶¶ 9, 14. The Debtor never contested that he promised to perform the additional renovations and repairs for Plaintiff. Indeed, the Debtor, either personally or through agents, attempted to complete certain of the renovations and repairs following closing. The Court finds that Plaintiff's reliance upon the Debtor's promises to complete the additional renovations and repairs in accordance with the Purchase Agreement was reasonable. However, Plaintiff failed to prove that the Debtor's promise to complete the work following closing was a fraudulent misrepresentation.

"Substandard performance or a mere breach of the construction contract do not rise to the level of fraud necessary to except the debt from discharge." *Webb v. Isaacson* (*In re Isaacson*), 478 B.R. 763, 775 (Bankr. E.D. Va. 2012) (quoting *Scheidelman v. Henderson* (*In re Henderson*), 423 B.R. 598, 622 (Bankr. N.D.N.Y. 2010)). Rather, to prove fraud or misrepresentation, Plaintiff must show "the debtor entered into the contract with the intent of never complying with the terms." *Id.* (quoting *In re Henderson*, 423 B.R. at 622). "[T]he appropriate time to measure the intent of a debtor not to perform a contract is at the moment of its formation." *Id.* (citing *Wallace v. Perry* (*In re Perry*), 423 B.R. 215, 283 (Bankr. S.D. Tex. 2010)). In evaluating similar facts, the Fourth Circuit held:

> [The plaintiff's] evidence of fraudulent intent thus amounts to nothing more than [the Defendants'] complete failure to perform two contractual obligations and [their] partial failure to perform two others. This evidence is insufficient to allow a reasonable jury to infer that the . . . defendants never intended . . . to perform [their] obligations under the Agreement. Indeed, [the Defendants'] partial performance of the Agreement makes such an inference unreasonable.    Moreover, even had there been no partial performance, the mere failure to perform contractual obligations is not enough evidence for a jury reasonably to infer fraudulent intent on the part of the breaching party.  Otherwise, plaintiffs could convert every breach of contract action into an action for fraud. . . . Without    a    secret    intent    not    to    perform, the . . . defendants did not make a misrepresentation of a material fact at the time they entered into the Agreement.

*Poth v. Russey*, 99 F. App'x 446, 454 (4th Cir. 2004) (per curiam) (unpublished decision) (internal citations omitted).

    *In re Isaccson* involved a homeowner who sought a finding that the debt owed to her by a debtor/contractor was non-dischargeable under section 523(a)(2)(A) of the Bankruptcy Code. 478 B.R. at 768.  The homeowner had contracted with the debtor to construct cabinets for her home.  *Id.* at 768-69.  The debtor constructed and delivered some but not all of the required cabinets.  *Id.* at 777.  The bankruptcy court determined that "[t]he deficiencies in the construction of the cabinets and Mr. Isaacson's subsequent failure to complete performance placed him in breach of the Cabinet Contract but [did] not constitute evidence of fraudulent intent;" rather, the debtor's partial performance "demonstrate[d] his intent to perform." *Id.*  As such, "[t]he Fourth Circuit Court of Appeal's reasoning in *Poth*, as applied to the instant facts, belies any finding that Mr. Isaacson had no intention to perform under the Cabinet Contract at the time of its formation based upon the belated and incomplete nature of his performance, the deficiency of such performance notwithstanding." *Id.* at 776.

As in *In re Isaacson* and *Poth*, Plaintiff failed to establish in the instant case that at the time the Debtor promised to complete the renovations to the Property and make the necessary repairs, the Debtor intended *not* to perform such promise.  Instead, the evidence adduced at trial established that the Debtor did fully intend to perform and attempted to partially perform following closing.  Plaintiff had obtained a thorough inspection report and was fully aware of the condition of the Property when she agreed to close.  In light of the Debtor's partial performance following closing and the absence of any evidence to infer that the Debtor never intended to complete the renovations and make the necessary repairs, the Court cannot infer fraudulent intent.  *See Poth*, 99 F. App'x at 454.  Therefore, the Court holds that Plaintiff's claim against the Defendant is dischargeable.  A separate order shall issue.

DATED:  ___October 15, 2019_____

_____/s/ Kevin R. Huennekens_____
UNITED STATES BANKRUPTCY JUDGE

Entered on Docket:  October 15, 2019

10